UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-cv-200-FL

| | |
|---|---|
| SHAWNA CANNON LEMON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>)<br>)<br>MYERS BIGEL, P.A., formerly known )<br>as "Myers Bigel & Sibley" and )<br>"Myers Bigel Sibley & Sajovec, P.A.," )<br>LYNNE A. BORCHERS and )<br>UNAMED OTHERS )<br>)<br>Defendants. ) | MEMORANDUM OF LAW IN<br>SUPPORT OF DEFENDANTS'<br>MOTION TO DISMISS<br>(Fed. R. Civ. P. 12(b)(6)) |

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Myers Bigel, P.A. ("Myers Bigel") and Lynne Borchers ("Borchers") respectfully submit this Memorandum in Support of their Motion to Dismiss.

## NATURE OF THE CASE

Plaintiff asserts employment-based claims against Myers Bigel and Borchers, Myers Bigel's former managing partner. Specifically, Plaintiff asserts gender and race discrimination and retaliation claims against Myers Bigel under Title VII of the Civil Rights Act of 1964, as amended, and a race discrimination claim against Myers Bigel and Borchers under 42 U.S.C. §1981. Plaintiff's Title VII claims must be dismissed because Title VII only applies to "employee/employer" relationships and Plaintiff has not adequately alleged that she was an "employee" of Myers Bigel. Plaintiff's 42 U.S.C. §1981 claim also must be dismissed because she has failed to set forth facts to state a claim for race discrimination that is plausible on its face as required to satisfy the pleading requirements of *Iqbal*

1

and *Twombly*. Accordingly, Myers Bigel and Borchers seek dismissal of Plaintiff's Complaint with prejudice under Rule 12(b)(6).

## FACTS ALLEGED IN THE COMPLAINT[1]

Plaintiff alleges that she has been a North Carolina licensed lawyer since 2001. (Compl. ¶ 13). She alleges that Myers Bigel employed her from September 2001 to December 2016 as one of its patent lawyers. (Id. ¶ 14). Plaintiff alleges that "throughout the tenure of [her] employment, Myers Bigel could hire or fire [her] at any time with or without cause"; "set the rules and regulations pertaining to [her] work and professional relationship with the firm"; reviewed her "work to ensure that assignments were met satisfactorily" and provided her "with feedback regarding the same under its quality control procedures"; required her "to report to someone with higher authority within the organization" of the firm; "intended [her] to be an employee as evidenced by the content in written employment and shareholder agreements"; and issued a Form W-2 to her to report gross income for each tax year. (Id.). That is the full extent of Plaintiff's allegations related to her claimed status as an "employee."

In support of her race-based claim under §1981, Plaintiff alleges that on or about September 14, 2016, she "elected" to participate in Myers Bigel's short-term leave/short term disability plan ("STL Plan") and that she was qualified to participate in the plan. (Id. at ¶¶33 & 34). Plaintiff alleges that on October 19, 2016, the Board voted 17-3 to deny her request. (Id. ¶42). Plaintiff alleges that unlike unidentified Caucasian shareholders whose requests for STL were "ministerially approved" at the management committee level, she was required to provide medical documentation, present the request to the Board for approval, and disclose medical conditions. (Id. ¶¶ 42 – 45). Plaintiff alleges

---

[1] Only the alleged facts implicated in determining Plaintiff's status as an "employee" under Title VII and the legal sufficiency of Plaintiff's race-based claim under §1981 are recited here. Defendants reserve the right to deny these allegations in subsequent pleadings, if necessary.

that at the same meeting a shareholder moved to change [Myers Bigel's] compensation plan for the retaliatory purpose to detrimentally affect [Plaintiff's] compensation, which contravened the firm's history of not changing a compensation plan in a negative manner when there is a subject specifically subject to the change" and that the firm " had never changed the compensation plan to adversely affect a Caucasian shareholder employee at the time of change as it did to [Plaintiff]." (Id. at ¶¶ 42 – 45).[2] Plaintiff also alleges that "on November 2, 2016, [she] became aware that [Myers Bigel's] management committee had openly discussed racial and gender discrimination and its retaliatory action against [Plaintiff and others] during at least one of its meetings." (Id. at ¶54).[3]

Regarding Borchers, Plaintiff alleges "on information and belief, Borchers was instrumental in influencing other board members to treat [Plaintiff] differently because of race" and that Myers Bigel and Borchers "denied [Plaintiff] the ability to elect or otherwise participate in the STL plan because she was African-American even though she was otherwise qualified." (*Id*. at ¶¶69-70).[4]

## **LEGAL STANDARD**

A motion to dismiss brought under Rule 12(b)(6) tests the legal sufficiency of the complaint. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial

---

[2] Plaintiff is careful not to allege that any such change was actually implemented as to her – an allegation that would put her at risk under Rule 11.

[3] Plaintiff fails to identify the members of the management committee, explain how she became aware of any such discussions, what the substance of those alleged discussions was, and even when these discussions supposedly took place.

[4] The only other allegation implicating race is that after a June 15, 2016 Board Meeting, a female shareholder told another shareholder that Plaintiff "played the black card too much" (Compl. ¶27) and that this statement, upon information and belief, was based on "unfair and inaccurate stereotypes about African-Americans" and was "an effort to discredit and isolate [Plaintiff] from collegiality and support in the workplace in retaliation for having reported gender discrimination." (Id. at ¶¶27 – 29). These allegations do not advance Plaintiff's §1981 claim because they contain no additional facts linking this alleged comment in any way to the denial of Plaintiff's request to participate in the STL Plans four (4) months later.

3

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of plausibility. *Id*. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although a court considering a Rule 12(b)(6) motion must accept as true all well-pleaded factual allegations, the court need not accept legal conclusions stated in the complaint. *Iqbal*, 556 U.S. at 678. To survive a motion to dismiss, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly,* 550 U.S. at 555.

In *Iqbal*, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. *Iqbal,* 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 554–55).

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. *Iqbal*, 556 U.S. at 679. Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief," and therefore should be dismissed. *Id.* (quoting Fed. R. Civ. P. 8(a)(2)) (citations omitted). In other words, if after taking the complaint's well-pleaded factual allegations as true, a lawful alternative explanation appears a "more likely" cause

4

of the complained of behavior, the claim for relief is not plausible. *Id.* at 680. If the complaint's well-pleaded factual allegations fail to nudge the plaintiff's claims "across the line from conceivable to plausible," then the "complaint must be dismissed." *Twombly*, 550 U.S. at 570. The Fourth Circuit has not hesitated to dismiss deficient complaints at the Rule 12(b)(6) stage. *See, e.g. Francis v. Giacomelli*, 588 F.3d 186 (2009)(explaining *Iqbal* and *Twombly* in light of "the recognized problems created by 'strike suits' [internal citations omitted] and the high costs of frivolous litigation."); *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin*., 780 F.3d 582, 585 (4th Cir. 2015)(affirming dismissal of Title VII claim because it "stopped short of the line between possibility and plausibility of entitlement to relief."); *Coleman v. Maryland Court of Appeals*, 626 F.3d 187 (4th Cir. 2010)(affirming dismissal of Title VII claim where allegations failed "to raise a right to relief above the speculative level").

In addition, although extrinsic evidence traditionally is not considered at the 12(b)(6) stage, this Court may consider an extrinsic document "in determining whether to dismiss the complaint if it was integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge its authenticity." *See Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (allowing the defendant to attach the professional provider agreement to the 12(b)(6) motion when plaintiff explicitly referred to it in the complaint); *see also Phillips v. LCI Int'l, Inc.,* 190 F.3d 609, 618 (4th Cir. 1999) (allowing the defendant to attach a "not for sale" statement to the 12(b)(6) motion when plaintiff explicitly relied on it in the complaint). Here, Plaintiff's Complaint explicitly refers to and relies on both an "employment agreement" and "shareholder agreement" (*See* Compl.

¶14(e)), as well as the firm's "compensation plan" and the STL Plan, and these documents should, therefore, be considered by this Court when determining the legal sufficiency of Plaintiff's claims.[5]

## ARGUMENT

I. **Plaintiff fails to allege facts sufficient to establish that she was an "employee" of Myers Bigel under Title VII.**

Plaintiff's Title VII claims of race and gender discrimination against Myers Bigel may proceed only if Plaintiff was an "employee" of the firm because Title VII's anti-discrimination protections extend only to those who are "employees" within the meaning of the statute. *See* 42 U.S.C. § 2000e-2 ("it shall be an unlawful employment practice for an employer to limit, segregate, or classify his *employees* . . . in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an *employee*…") (emphasis added). Title VII provides only a nominal definition for an employee. *See* 42 U.S.C. § 2000e(f) ("the term 'employee' means an individual employed by an employer"). Accordingly, in *Clackamas Gastroenterology Assocs. P. C. v. Wells*, 538 U.S. 440, 450, 123 S. Ct. 1673, 1680, 155 L. Ed. 2d 615 (2003), the Supreme Court adopted the following non-exclusive list of factors to consider when determining whether individuals who are "partners, officers, members of boards of directors, and major shareholders" qualify as an "employee" under federal antidiscrimination laws: (1) whether the organization can hire or fire the individual or set the rules and regulations of the individual's work; (2) whether and, if so, to what extent the organization supervises the individual's work; (3) whether the individual reports to someone higher in the organization; (4) whether and, if so, to what extent the individual is able to influence the organization; (5) whether

---

[5] A copy of the "Employment Agreement" between Plaintiff and the firm is attached as Exhibit A; the "Shareholders' Agreement" and all modifications is attached as Exhibit B; the Standard Shareholder Compensation Plan is attached as Exhibit C; and the STL Plan is attached as Exhibit D.

the parties intended that the individual be an employee, as expressed in written agreements or contracts; and (6) whether the individual shares in the profits, losses, and liabilities of the organization. *Id*. at 449. The ultimate question is "whether the individual acts independently and participates in managing the organization, or whether the individual is subject to the organization's control." *Id*. No one factor is decisive. *Id.* at 451. Neither a title nor the parties' characterization of the relationship is determinative. *Id at 450*.[6]

Here, Plaintiff's allegations simply parrot the *Clackamas* factors in conclusory terms but wholly fail to allege specific facts sufficient to establish any of the factors. For example, Plaintiff alleges Myers Bigel "would set the rules and regulations pertaining to Lemon's work and professional relationship with the firm," but provides no detail. She alleges that Myers Bigel reviewed her work and provided feedback, but again provides no detail including whether she was forced to accept the feedback or had ultimate control over her final work product. She alleges that she "had to report to someone with high authority," but does not explain what she is reporting about or to whom she was reporting. She alleges that the "employment agreement," and "shareholder agreement" show intent to form an employment relationship, but she does not offer anything more to support this assertion (which as explained below is belied by the documents themselves). She alleges that "admissions from other shareholders" show an intent that she be an "employee," but fails to identify these "admissions," who supposedly made them, or when they were made. Critically, Plaintiff does not make any allegations, even conclusory ones, tending to show the fourth and sixth *Clackamas* factors. Specifically, Plaintiff fails to address at all to what extent she was able to "influence the organization." For example, she does not allege any facts related to her voting power as a

---

[6] In *Clackamas*, the issue was whether four physician shareholder-directors were "employees" for purposes of determining if the medical practice had enough "employees" to be a covered "employer" subject to the Americans with Disabilities Act (requiring 15 or more employees in 20 or more calendar weeks).

7

shareholder, her right to participate in management decisions including approval of the amendments to the Shareholder Agreement, approval of the annual budget, approval of significant expenditures, approval of or modifications to the Compensation Plan, hiring/firing of associate lawyers, any borrowing by the firm, admission of new members as Shareholders or termination/expulsion of Shareholders, or amendments to By-Laws. Plaintiff also fails to address at all whether as an equal shareholder she shared in the profits, losses, and liabilities of the firm or had access to the firm's financial records and information. The only real fact she alleges - the issuance of a W-2 to her as a shareholder in a corporation – is not dispositive of employee status. *See Bluestein v. Cent. Wisconsin Anesthesiology,* S.C., 769 F.3d 944, 955 (7th Cir. 2014) (explaining that receiving a W-2 is not dispositive of an employment relationship and must be evaluated along with the other factors).

Moreover, the documents Plaintiff refers to in the Complaint show that she was not an "employee." First, the Employment Agreement dated September 4, 2001, expressly states the "employment" ends when the individual becomes a Shareholder. (*See* Exhibit A, ¶ 3). Second, the Shareholders' Agreement dated February 16, 1998, as modified, and entered into by Plaintiff on January 2, 2007, shows that Plaintiff was one of twenty (20) equal owners of the firm, each Shareholder owning 5,000 shares of firm stock. In other words, Plaintiff had the exact same ownership interest in the firm as all other Shareholders. Plaintiff bought her ownership interest in the firm for $62,241.17. (*See* Exhibit B, Tenth Modification to Shareholder Agreement, Bates #MB-000146-161). Third, the Standard Shareholder Compensation Plan shows that the compensation of all shareholders, including Plaintiff, was based on several factors including individual shareholder

collections, firm revenue, and firm expenses and that firm revenue (except for individual shareholder collections) and firm expenses were allocated <u>equally</u> among <u>all</u> shareholders. (*See* Exhibit C).[7]

In sum, Plaintiff's conclusory allegations, particularly when viewed in light of the documents Plaintiff references in the Complaint, fail to satisfy the pleading requirements of *Iqbal* and *Twombly*. As a result, Plaintiff's Title VII gender and race discrimination claims should be dismissed.

**II. Plaintiff fails to allege facts sufficient to establish a claim for race discrimination under §1981**

Plaintiff complains that Myers Bigel and Borchers intentionally discriminated against her "because of her race by rejecting her request to participate in [the firm's] STL plan even though she was fully qualified for the same." (Compl. ¶71). Plaintiff fails, however, to allege any facts indicating that this decision was motivated by or even related to her race.

This bald assertion of race discrimination, unadorned by factual allegations, is no more than a conclusion that is not entitled to the assumption of truth and does not survive an *Iqbal/Twombly* analysis. The factual allegations fare no better under the *Iqbal/Twombly* plausibility analysis that requires the Court to undertake a context-specific task drawing on its judicial experience and common sense to determine whether the factual allegations move the plaintiff's claims across the line from conceivable to plausible and holds that speculation does not suffice and alternative explanations are fatal.

The Fourth Circuit has applied *Iqbal/Twombly* to dismiss a complaint pleading facts that while consistent with discrimination, require speculation to fill in the gaps and therefore fail to nudge the plaintiff's claims across the line from conceivable to plausible.

---

[7] Other documents not referenced by Plaintiff and facts omitted by Plaintiff overwhelmingly show that she was not an "employee" for any purpose, but inclusion of those documents and facts in this brief would not be proper given the limited scope of a Rule 12 motion.

9

> The allegations that [the employer] did not hire [plaintiff] because its decision makers were biased is simply too conclusory. Only speculation can fill the gaps in [plaintiff's] complaint – speculation as to why two "non-Black candidates" were selected to fill the positions instead of [plaintiff]. While the allegation that non-Black decisionmakers hired non-Black applicants instead of plaintiff is *consistent* with discrimination, it does not alone support a *reasonable inference* that the decisionmakers were motivated by bias. . . . In short, [plaintiff's] complaint stopped short of the line between possibility and plausibility of entitlement to relief.

*McCleary-Evans,* 780 F.3d at 586 (emphasis in original) (citations omitted) (dismissing plaintiff's Title VII discrimination claims at 12(b)(6) stage); s*ee also Coleman,* 626 F.3d 187 (race discrimination claim dismissed where the plaintiff's allegations failed to "raise a right to relief above the speculative level") (citing *Twombly*, 550 U.S. at 555); *Giacomelli*, 588 F.3d 186 (affirming dismissal of § 1981 claim because allegations that (1) plaintiff was in a protected class; (2) the defendants were white; and (3) the defendants never terminated white employees in the same manner that the plaintiff was terminated were insufficient "unadorned allegations of wrongdoing").

Like the *McCleary-Evans* plaintiff, Plaintiff here asks the Court to infer that because she is African-American, and was not allowed to participate in the STL Plan while unidentified others who are Caucasian were allowed to participate in the STL Plan, Myers Bigel and Borchers discriminated against her because she is African-American. Rule 12 requires much more.

Plaintiff does allege that she was a "qualified applicant" under the STL Plan, but does not set forth the actual terms of the plan nor explain how she was qualified under those terms.[8] She does not identify what her "health condition" or the "qualifying events" of her immediate family

---

[8] The STD/STL Plan applies only to Shareholders and applies when the Shareholder experiences a "[p]rolonged physical or mental illness . . . for which leave is recommended by a physician"; the birth or adoption of a child by the Shareholder; or an immediate family member has a "protracted serious illness" or there is some other "protracted family emergency that imposes a substantial burden on the Shareholder and impairs the ability of the Shareholder to meet the 1600 billable hour requirement." (*See* Exhibit D). The STL Plan also provides that the Shareholder discuss their "individual circumstances with the Management Committee and then the Board of Directors . . . to confirm that they are eligible . . . ."

members were. Plaintiff does not allege that her "health condition" or the "qualifying events" of her family members were in any way similar to those of the unidentified Caucasians to whom she compares herself. She does not even allege that she suffered any negative economic consequence as a result of not participating in the STL Plan, and, critically, she provides no facts supporting a reasonable inference that her race was the cause of the decision to deny her participation in the STL Plan. These are crucial omissions because a complaint must establish a plausible basis for believing that the comparators were "actually similarly situated" or "race was the true basis for the adverse action." *Coleman,* 626 F.2d 191.

With regard to Borchers, in addition to the deficiencies set forth above, Plaintiff also fails to allege facts sufficient to impose individual liability on Borchers under §1981 for denial of her request to participate in the STL Plan. Plaintiff alleges only the following:

1. Borchers was the managing shareholder and vice president from January 1, 2016 to January 3, 2017. (Compl. ¶5)

2. "On information and belief, Borchers was instrumental in influencing other board members to treat Lemon differently because of race, as alleged herein." (Compl. ¶69)

3. "On information and belief, [Myers Bigel] and Borchers denied Lemon the ability to elect or otherwise participate in the STL plan because she was an African American even though she was otherwise qualified." (Compl. ¶70).

4. "In violation of 42 U.S.C. §1981, [Myers Bigel] and Borchers denied Lemon the right to make and enforce her contract with [Myers Bigel] and to have the full and equal benefit of all laws when [Myers Bigel] and Borchers intentionally discriminated against Lemon because of her race by rejecting her request to

11

participate in [Myers Bigel's] STL plan even though she was fully qualified for the same." (Compl. ¶71).

5. That Plaintiff was damaged by Borchers acts of discrimination, and that Borchers acted with "malice or reckless indifference" to Plaintiff's federally protected rights. (Compl. ¶¶72 and 73).

Like the allegations in *McCleary-Evans* and *Coleman*, the allegations of alleged discrimination here are simply too conclusory. Only speculation can fill the gaps in the Complaint. While the allegation that Caucasians were approved to participate in the STL Plan and Plaintiff was not may be *consistent* with race discrimination, that alone does not support a reasonable inference that the decisionmakers were motivated by racial bias. As for the allegations of race discrimination against Borchers personally, they are minimal and contain no facts – just unsupported conclusions. As in *McCleary-Evans* and *Coleman*, the Complaint here stops short of the line between possibility and plausibility of entitlement to relief on the §1981 race discrimination claim and, under the pleading requirements of *Iqbal* and *Twombly*, must be dismissed pursuant to Rule 12 (b)(6).

## CONCLUSION

The facts alleged in the Complaint fail to state a plausible claim for relief as required by *Iqbal* and *Twombly*. Accordingly, Myers Bigel and Lynne Borchers respectfully request that this Court grant the Motion to Dismiss and dismiss with prejudice Plaintiff's claims against them.

This the 6th day of August, 2018.

                SMITH, ANDERSON, BLOUNT, DORSETT,
                    MITCHELL & JERNIGAN, L.L.P.

By: /s/ Kerry A. Shad
     Kerry A. Shad
     State Bar No. 18410
     Post Office Box 2611
     Raleigh, North Carolina 27602-2611
     Telephone:  (919) 821-1220
     Facsimile:  (919) 821-6800
     E-Mail:  kshad@smithlaw.com
     Attorneys for Defendants

<u>CERTIFICATE OF SERVICE</u>

This is to certify that on this day, I electronically filed the foregoing document with the Clerk of Court, using the CM/ECF system, which will send notification of such filing to the CM/ECF participants as addressed below:

J. Heydt Philbeck
Bailey & Dixon, LLP
434 Fayetteville Street, Suite 2500
Raleigh, North Carolina 27601

This the 6th day of August, 2018.

/s/ Kerry A. Shad
Kerry A. Shad
State Bar No. 18410
Post Office Box 2611
Raleigh, North Carolina 27602-2611
Telephone: (919) 821-1220
Facsimile: (919) 821-6800
E-Mail: kshad@smithlaw.com
Attorneys for Defendants