UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-cv-200-FL

| | | |
|---|---|---|
| SHAWNA CANNON LEMON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | DEFENDANTS' MEMORANDUM OF |
| v. | ) | LAW IN OPPOSITION TO |
| | ) | PLAINTIFF'S MOTION FOR LEAVE |
| MYERS BIGEL, P.A., formerly known as | ) | TO AMEND THE COMPLAINT |
| "Myers Bigel & Sibley" and "Myers Bigel | ) | |
| Sibley & Sajovec, P.A.," LYNNE A. | ) | |
| BORCHERS and UNNAMED OTHERS, | ) | |
| | ) | |
| Defendants. | ) | |

## NATURE OF THE CASE

More than seven months after filing her complaint, and more than three months after Defendants moved to dismiss that complaint, Plaintiff moved for leave to amend her complaint. In her motion, Plaintiff asks the Court to allow her to overhaul the 82-paragraph existing complaint into a 187-paragraph amended complaint. According to Plaintiff, the proposed amendments would provide "additional factual allegations" supporting her existing claims and two new claims that she "realized" she might have after reviewing Defendants' arguments that her existing claims should be dismissed.

Granting Plaintiff leave to amend would serve no purpose because her proposed amended complaint neither salvages her existing claims nor states any new claim that could survive a motion to dismiss. First, Plaintiff's proposed amendments do nothing to address the intrinsic flaws in her existing federal law claims. Specifically, she still fails to allege facts sufficient to show either that she was an "employee" of Myers Bigel as required to invoke the protections of Title VII or that the denial of her request to participate in the firm's short term leave plan ("STL Plan") was in any

way motivated by her race as required by Section 1981. Second, Plaintiff's proposed new claims are equally ripe for dismissal. The proposed breach of fiduciary duty claim is premised and dependent on the notion that Defendant Lynne Borchers was a controlling shareholder, but Plaintiff has not alleged facts supporting that conclusion. On the contrary, Plaintiff's own allegations reveal that Borchers held a scant four percent of Myers Bigel's stock during the relevant period, and that the six shareholders Plaintiff misleadingly labels the "Controlling Group" only controlled 24 percent of its stock. Even if Plaintiff could show that Borchers owed a fiduciary duty, she fails to allege any facts showing that Borchers breached such a duty or caused her actual harm. The proposed claim for breach of the covenant of good faith and fair dealing fails because Plaintiff has not alleged facts showing the type of special relationship necessary to make out that claim. Even if she had, this claim would fail because Plaintiff has not alleged facts showing that she was deprived of any bargained-for benefit under the relevant agreements. For these and the other reasons articulated below, Plaintiff's proposed amendments are destined to fail, and thus granting her leave to amend would serve no purpose.

## PROCEDURAL HISTORY

Plaintiff filed her complaint in Wake County Superior Court on April 4, 2018. Defendants timely removed this action to this Court. (D.E. 1.) Plaintiff's complaint purports to state claims of gender and race discrimination and retaliation under Title VII of the Civil Rights Act of 1964 and a claim for race discrimination under 42 U.S.C. § 1981. On August 8, 2018, Defendants filed a Motion to Dismiss (D.E. 17) and supporting Memorandum of Law (D.E. 18). Plaintiff responded in opposition to that motion on September 9, 2018 (D.E. 21), and Defendants replied on September 24, 2018 (D.E. 23).

2

On November 19, 2018, almost two months after briefing was completed on Defendants'

motion to dismiss, Plaintiff filed a Motion for Leave to Amend the Complaint (D.E. 26) and

supporting Memorandum of Law (D.E. 27). Plaintiff's proposed amended complaint is more than

double the length of her original complaint (187 paragraphs compared to 82 paragraphs in the

original complaint) and would add two new North Carolina common law claims—breach of

fiduciary duty and breach of the implied covenant of good faith and fair dealing—to the federal

law claims already asserted in this action.

ARGUMENT

While Rule 15(a)(2) states that leave to amend should be freely given "when justice so

requires," such leave is properly denied "when the amendment would be prejudicial to the

opposing party, there has been bad faith on the part of the moving party, or the amendment would

have been futile." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (quoting *Johnson v.

Oroweat*, 785 F.2d 503, 509 (4th Cir. 1986)). In particular, it is well-established that leave to

amend can and should be denied when the proposed amendment would be futile. *Foman v. Davis,*

371 U.S. 178, 182 (1962); *see also New Beckley Mining Corp. v. Int'l Union, United Mine

Workers*, 18 F.3d 1161, 1164 (4th Cir. 1994) (affirming denial of leave to amend the complaint

where the proposed amendment "would not have corrected the fundamental defect in the

complaint"); *Burns v. AAF-McQuay, Inc.*, 166 F.3d 292, 295 (4th Cir. 1999) (affirming denial of

leave to amend the complaint to add a new claim because the amendment would have been futile).

And, while delay alone is not a sufficient reason to deny leave to amend, delay combined with

prejudice, bad faith, or futility supports denying leave to amend. *Johnson*, 785 F.2d at 509–10.

Here, Plaintiff waited more than seven months after filing her complaint to seek leave to

amend and has not identified any legitimate reason for waiting to assert state law claims and add

3

105 paragraphs to her complaint. Leave to amend should be denied because Plaintiff's proposed amended complaint neither rescues her existing claims from dismissal nor states any new claim that could escape the same fate.

## I. Plaintiff's additional factual allegations do not save her federal law claims.

The deficiencies in Plaintiff's original complaint are fully described in the Memorandum of Law in Support of Defendants' Motion to Dismiss (D.E. 18) and Reply Memorandum of Law in Support of Defendants' Motion to Dismiss (D.E. 23). Rather than retreading that ground here, Defendants incorporate those arguments by reference and respectfully refer this Court to those filings.

### A. The alleged facts are insufficient to show that Plaintiff was an "employee" under Title VII.

Focusing on the proposed amended complaint, while it is more than double the length of the original complaint, very few of the additional allegations relate to Plaintiff's original federal claims, most are not new at all, and none cure the deficiencies identified in Defendants' prior filings. To the contrary, Plaintiff seeks to add allegations that further confirm that she cannot show that she was an "employee" under the *Clackamas* test.

Plaintiff relies on three "facts" to establish "employee" status: (i) she entered into an Employment Agreement when she was hired as an associate in 2001; (ii) she received a Form W-2; and (iii) she was subject to a Quality Control policy. These allegations are insufficient to establish that once she became a shareholder in 2007 she nevertheless remained an "employee" for purposes of Title VII.

As an associate, Plaintiff clearly was an employee—she could be terminated without cause on 30 days' notice (Prop. Am. Compl. ¶ 20) and was subject to the typical control law firms exert over their associates. (*Id.* ¶ 21). As an associate, Plaintiff was paid a salary—she did not share in

4

the profits or expenses of the firm. (*See* D.E. 18-3.) Most importantly, as an associate, Plaintiff did not have any ownership interest in the firm nor any right to participate in the management of or to control the firm.

All of this changed, however, when Plaintiff became a shareholder on January 2, 2007. (Prop. Am. Compl. ¶ 39.) She purchased 5,000 shares in the firm for $62,241.17. (*Id.* ¶ 40.) As a shareholder, Plaintiff owned an equal number of shares in the firm as other shareholders, served as a director and officer of the firm (Vice President and Secretary in 2016), and had "equal shareholder rights and voting power." (*Id.* ¶¶ 37, 44.) According to Plaintiff, the firm is "owned by its shareholders" and "conducted its business through regularly-occurring special meetings of the Board of Directors." (*Id.* ¶¶ 30–31, 33.) Plaintiff alleges that only the Board of Directors (of which she was a member) can admit, expel, or terminate shareholders. (*Id.* ¶ 35.) Plaintiff alleges that after she became a shareholder she "continued to be compensated as an employee," but that allegation is proven false by the Shareholder Compensation Plan itself, under which shareholders were not paid a salary but instead were compensated based on several factors, including individual shareholder collections, firm revenue, and firm expenses (allocated equally among shareholders)—the hallmarks of ownership. (D.E. 18-3 at 2–5.) These are undisputed and undisputable facts which preclude Plaintiff from establishing that she remained an employee of Myers Bigel after she became a shareholder.

The existence of the Quality Control policy does not alter the analysis or establish "employee" status. Plaintiff alleges only that all shareholders' work was subject to "substantive review by another shareholder to ensure that assignments were met satisfactorily" and to provide "feedback" and that bills had to be reviewed before being sent to firm clients. (Prop. Am. Compl. ¶¶ 22–23.) Review and feedback is not "control"—Plaintiff does not allege that another

shareholder could, much less ever did, require a change to her work or substitute that shareholder's legal judgment for Plaintiff's, or that her bills were ever altered. Myers Bigel is a law firm, not a confederation of sole practitioners. The Quality Control policy is a risk management tool in a highly technical and high-risk intellectual property practice. It does not confer "employee" status on shareholders.[1]

In sum, under *Clackamas* and the other authorities cited in Defendants' earlier filings, Plaintiff has failed to allege facts sufficient to show that she was an "employee" of Myers Bigel after she became a shareholder in 2007. To the contrary, the undisputed facts establish that she was not an "employee" after 2007. The Title VII claims, therefore, must be dismissed.

**B.      Plaintiff has failed to state a claim for race discrimination under Title VII or Section 1981.**

Plaintiff's race discrimination claim is based solely on the denial of her request to invoke the firm's STL Plan. Defendants' earlier filings provided a roadmap for Plaintiff to follow to sufficiently plead this claim. Plaintiff's proposed amended complaint not only fails to cure the deficiencies, but affirmatively alleges a non-discriminatory reason for the denial—the firm's belief that Plaintiff's alleged "qualifying events" did not satisfy the requirements of the STL Plan. (*See id.* ¶ 102).

As in the original complaint, Plaintiff alleges only that she was a "qualified applicant." (*Id.* ¶¶ 91–92.) And, like in the original complaint, she alleges no facts to support that conclusion. She alleges a "health condition," but offers no information regarding what her STL-qualifying "health

---

[1] Plaintiff's allegation that "[d]uring 2016, all attorneys at the firm reported to the Management Committee, and to Borchers as Managing Shareholder" is conclusory and based on no facts and, therefore, must be disregarded. (Prop. Am. Compl. ¶ 24.)

6

condition" was or how it affected her ability to work.[2] She alleges "qualifying events" experienced by her "immediate family members," but offers no information about those events or who the family members were. While Plaintiff need not plead all of the details, she must plead enough facts so that the court is not required to take her word that she was "qualified" under the STL Plan. Plaintiff's failure to provide any facts about these alleged health conditions and events also makes it impossible to conclude that she was "similarly situated" to the unidentified Caucasian shareholders to whom she compares herself. (*Id.* ¶¶ 105–06).

In addition, like the original complaint, the only allegation implicating race in the proposed amended complaint is that in June 2016 a female shareholder (Julie Richardson) told another shareholder (unidentified) that Plaintiff "played the black card too much." (*Id.* ¶ 76). Plaintiff alleges this statement was made "in retaliation for having reported gender discrimination . . . ." (*Id.* ¶ 78.) Plaintiff still has alleged no facts linking this alleged comment to the 17-3 vote of the Board of Directors four months later denying Plaintiff's request to invoke the STL Plan. In fact, Plaintiff alleges that Richardson expressed the view that the STL Plan was "for prolonged family illness" and that she "did not see how [Plaintiff's] 'qualifying events' were covered by the STL Plan." (*Id.* ¶ 102.) This alternative non-discriminatory explanation, coupled with the absence of any facts showing that race played a role in the denial of STL, is exactly what requires dismissal under *Iqbal* and *Twombly*. For these reasons, Plaintiff's race-based claims under Title VII and Section 1981 against Myers Bigel and Borchers must be dismissed.

---

[2] Plaintiff claims that in November or December of 2016, well after she was denied STL, she provided a doctor's note related to her asthma (Prop. Am. Compl. ¶ 130), but she does not allege that the asthma qualified her to participate in the STL Plan, nor could she credibly do so, as it was not a "[p]rolonged physical or mental illness suffered by the Shareholder for which leave is recommended by a physician" (D.E. 18-4 at 2).

7

## II. Plaintiff's proposed amended complaint does not adequately plead a breach of fiduciary duty claim against Lynne Borchers.

In her proposed amended complaint, Plaintiff seeks to assert a North Carolina state law claim for breach of fiduciary duty against Borchers. Plaintiff alleges that Borchers was an "officer, director, and controlling shareholder" of Myers Bigel and thus owed a fiduciary duty to Plaintiff. (Prop. Am. Compl. ¶ 166.) Plaintiff asserts that Borchers breached this purported fiduciary duty by "impermissibly discriminating against [Plaintiff] based on her gender and race, denying her qualifying STL/STD request, subjecting her to a hostile work environment, threatening to take punitive action against her for voicing sincere concerns about discrimination at MB and amending the Attorney Compensation Plan solely to penalize [Plaintiff] for the same." (*Id.* ¶ 171.)

"For a breach of fiduciary duty to exist, there must first be a fiduciary relationship between the parties." *Green v. Freeman*, 367 N.C. 136, 141, 749 S.E.2d 262, 268 (2013) (quoting *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001)). To state a claim for breach of fiduciary duty, a plaintiff must allege that (i) the defendant owed the plaintiff a fiduciary duty; (ii) the defendant breached that duty; and (iii) that breach proximately caused injury to the plaintiff. *Green*, 367 N.C. at 141, 749 S.E.2d at 268; *Farndale Co., LLC v. Gibellini*, 176 N.C. App. 60, 68, 628 S.E.2d 15, 20 (2006).

Plaintiff's proposed breach of fiduciary duty claim fails for several independent reasons: (i) Plaintiff has not adequately alleged that Borchers was a controlling shareholder or otherwise owed her a fiduciary duty; (ii) Plaintiff has not adequately alleged that Borchers breached any fiduciary duty to Plaintiff or Myers Bigel; (iii) Plaintiff has not adequately alleged that Borchers benefited, or sought to benefit, from breach of such a duty; and (iv) Plaintiff has not adequately alleged that any such breach proximately caused harm to Plaintiff.

**A.     Plaintiff has not adequately alleged that Borchers owed a fiduciary duty to Plaintiff.**

Plaintiff contends that Borchers owed Plaintiff a fiduciary duty because Borchers was (i) an officer and director of Myers Bigel and (ii) a controlling shareholder of Myers Bigel.[3]  Neither contention holds water.

**i.     Officers and directors like Borchers owe a fiduciary duty to the corporation, not to individual shareholders.**

Under North Carolina law, corporate officers and directors owe fiduciary duties to the corporation, not to individual shareholders.  *Rivers v. Wachovia Corp.*, 665 F.3d 610, 616 (4th Cir. 2011) (affirming Rule 12(b)(6) dismissal of shareholder's breach of fiduciary claims against corporation and its executives).  In *Rivers*, the Fourth Circuit explained the plaintiff sought "to transform the nature of that duty to one owed to him individually, but under North Carolina law the fiduciary duty runs to the corporate entity and any breach may only be asserted by a shareholder derivatively."  *Id.*  The court further explained that

> [u]nder North Carolina law, officers and directors of a corporation owe a fiduciary duty to the corporation which does not create an individual cause of action.  *See* N.C. Gen.Stat. § 55–8–30 ("A director shall discharge his duties as a director ... in a manner he reasonably believes to be in the best interests of the corporation."); *Id.* § 55–8–42 (same with respect to a corporate officer).  As the commentary to the statute emphasizes, the prior version of the law "provided that officers and directors stand in a fiduciary relation 'to the corporation and its shareholders,'" while the amended version omits mention of a fiduciary duty to shareholders.  The amendment was intended "to avoid an interpretation that there is a duty running directly from directors to the shareholders that would give shareholders a direct right of action on claims that should be asserted derivatively." Commentary to N.C. Gen.Stat. § 55–8–30.

---

[3] Plaintiff's lone allegation that Borchers owed a fiduciary duty to Plaintiff as her "law partner"— a term that is inherently ambiguous—is not supported by any well-pled facts showing a partnership relationship, and is refuted by Plaintiff's specific allegations that Borchers and Plaintiff were fellow shareholders in a professional association.  (Prop. Am. Compl. ¶ 169.)

*Id.* at 617; *see also Green*, 367 N.C. at 141, 749 S.E.2d at 268; *Estate of Browne v. Thompson*, 219 N.C. App. 637, 641, 727 S.E.2d 573, 576 (2012). Accordingly, Borchers did not owe any fiduciary duty to Plaintiff based on her status as an officer and director of Myers Bigel.

      **ii.**      **Plaintiff has not plausibly alleged that Borchers was a controlling shareholder of Myers Bigel.**

"As a general rule, shareholders in a corporation do not owe a fiduciary duty to each other or to the corporation." *Freese v. Smith*, 110 N.C. App. 28, 37, 428 S.E.2d 841, 847 (1993). However, majority shareholders (acting individually or as a group with an aggregated majority) of a corporation have been held to owe fiduciary duties to minority shareholders because majority shareholders "have a community of interest with the minority holders in the same property and because the latter can act and contract in relation to the corporate property only through the former." *Gaines v. Long Mfg. Co.*, 234 N.C. 340, 344, 67 S.E.2d 350, 353 (1951) (quotation omitted); *see also Loy v. Lorm Corp.*, 52 N.C. App. 428, 432, 278 S.E.2d 897, 901 (1981); *Brewster v. Powell Bail Bonding, Inc.*, No. 17 CVS 4462, 2018 WL 3603023, at *4 (N.C. Super. July 26, 2018). "It is the fact of control of the common property held and exercised . . . that creates the fiduciary obligation on the part of the majority stockholders in a corporation for the minority holders." *Gaines*, 234 N.C. at 344–45, 67 S.E.2d at 353 (quotation omitted).

The North Carolina Supreme Court has never held that a minority shareholder owes a fiduciary duty to other stockholders. *Corwin v. British Am. Tobacco PLC*, ___ S.E.2d ___, No. 56PA17, 2018 WL 6437701, at *7 (N.C. Dec. 7, 2018). In *Corwin*, the court considered, but did not resolve, the question of whether a minority shareholder that exercises actual control over the board of directors could owe a fiduciary duty to other shareholders. The court noted that under Delaware law, it is settled that a minority shareholder who exercises "actual control" over a corporation does owe fiduciary duties to minority shareholders of that corporation. *Id.* at *7. The

Delaware standard focuses on "actual control over the board of the directors," and actual control only exists when the "allegedly controlling stockholder exercises such formidable voting and managerial power that it, as a practical matter, is no differently situated than if it had majority voting control." *Id.* (quotation and alternations omitted). For actual control to exist, the allegedly controlling stockholder's "power must be so potent that independent directors cannot freely exercise their judgment, fearing retribution." *Id.* (quotation and alternations omitted).

While the North Carolina Supreme Court did not decide in *Corwin* whether to adopt the Delaware approach, it did hold that the plaintiff had failed to allege facts that would establish that the defendant exercised actual control over the board of directors, and thus failed to plead a breach of fiduciary duty claim. *Id.* at *9. The court also noted that even at the Rule 12(b)(6) stage, the test of actual control is not an easy one and even stockholders with "very potent clout" have been deemed to "fall short of the mark" required to give rise to a fiduciary duty owed to other shareholders. *Id.* (quoting *Sciabacucchi v. Liberty Broadband Corp.*, No. CV 11418-VCG, 2017 WL 2352152, at *16 (Del. Ch. May 31, 2017)); *see also Brewster*, 2018 WL 3603023, at *4 ("A conclusory allegation of control is insufficient to defeat a motion to dismiss.")

Here, there are no well-pled facts that support the notion that Borchers exercised actual control over the Myers Bigel Board of Directors. Instead, Plaintiff simply repeats ad nauseam the mantra that Borchers was a "controlling shareholder" (*e.g.*, Prop. Am. Compl. ¶¶ 5–6, 166, 169) and that Borchers (or Borchers and the so-called "Controlling Group") exercised "actual control" (*e.g.*, *id.* ¶¶ 51–52, 56, 74, 167–68, 170). Invoking "magic words" without supporting facts does not satisfy Rule 12(b)(6).

Setting aside these conclusory statements, the factual allegations in the proposed amended complaint actually undermine, rather than support, Plaintiff's contention that Borchers was a

11

"controlling shareholder." For example, the proposed amended complaint acknowledges that (i) "each shareholder holds an equal number of shares of MB and serves as a director and officer of MB," (ii) "[e]ach MB shareholder also served as a director of MB, as required by the Bylaws," and (iii) "[e]ach MB shareholder served as an officer of MB in some capacity." (*Id.* ¶¶ 31–32, 37.) For 2016, the year that is the focus of Plaintiff's allegations, Plaintiff admits that "there were twenty-five (25) shareholders of MB, each owning 5,000 share of MB stock with equal shareholder rights and voting power." (*Id.* ¶ 44.) In other words, every shareholder, including Plaintiff, owned the same percentage of shares that Borchers did (four percent); every shareholder, including Plaintiff, was an officer of Myers Bigel; and every shareholder, including Plaintiff, was an equal voting member of Myers Bigel's Board of Directors.

Plaintiff's allegations about the misleadingly named "Controlling Group" are equally unsupported and self-defeating. Plaintiff describes Borchers as the "leading member of a controlling group of shareholders" consisting of Borchers and five other shareholders, which Plaintiff dubs the "Controlling Group."[4] (*Id.* ¶ 49.) By its very terms, however, this definition concedes that the so-called "Controlling Group" owned a paltry twenty-four percent of Myers Bigel's shares (four percent per shareholder times six shareholders) in 2016. In an understated concession, Plaintiff admits that the so-called "Controlling Group" "did not hold a numeric majority of MB shares." (*Id.* ¶ 52.)

Plaintiff's remaining allegations about Borchers and the so-called "Controlling Group" are completely conclusory. For example, with respect to Borchers, Plaintiff alleges that she was

---

[4] Plaintiff alleges that the so-called "Controlling Group" includes "Others" whom she does not name. This allegation, which is unsupported by any facts, deserves no credence and in fact undercuts the idea that there is any identifiable "Controlling Group"—if there was, Plaintiff should be able to discern and name its members based on their actions.

12

Managing Shareholder and Vice President (Prop. Am. Compl. ¶ 5), but does not describe how those titles translated into actual control. Plaintiff also alleges that Borchers was part of a five-person "Management Committee" that purportedly controlled the Board by, of all things, scheduling Board meetings, preparing and circulating agendas for those meetings, and making recommendations to the Board. (*Id.* ¶¶ 47–48.) These are typical and expected activities of a Management Committee. Plaintiff also alleges that Borchers and the Controlling Group had "control of MB's revenues and major client relationships," but does not provide any facts to clarify or support that allegation. (*Id.* ¶ 50.)

In *Corwin*, by contrast, the alleged controlling stockholder, British American Tobacco PLC ("BAT"), owned 42 percent of the company and had certain additional rights and powers under a governance agreement. *Corwin*, 2018 WL 6437701, at *1–2. Nevertheless, the North Carolina Supreme Court held that, even assuming a minority shareholder can be a controlling shareholder under North Carolina law, the plaintiffs had failed to adequately allege that BAT was a controlling shareholder. In reaching this conclusion, the court noted that actual control is a high standard and requires a demonstration that the minority shareholder acts with the same authority it would if it were the majority shareholder. *Id.* at *7–9. The court further noted that a minority shareholder is not a controlling shareholder by virtue of the fact that a minority shareholder (i) has great leverage over a transaction; (ii) has the authority to veto certain transactions, or (iii) has the authority to appoint certain directors where it has not been shown that the other directors were controlled by the minority shareholder and not free to exercise their own discretion for fear of retribution. *Id.* at *9–12. The court concluded that because BAT did not have majority voting power, could not retaliate against the shareholders it did not appoint, and the transaction could not have been

approved without the votes of non-BAT-appointed directors, BAT did not exercise actual control and thus did not owe any fiduciary duties to the other shareholders. *Id.* at *13.

Here, while Plaintiff repeatedly alleges that Borchers and the so-called "Controlling Group" exercised "actual control," she never pleads any facts showing how these six shareholders, owning less than one fourth of MB's shares, exercised such "actual control" over the Board of Directors. (*See, e.g.,* Prop. Am. Compl. ¶¶ 51–53.) As noted in *Corwin*, the fact that Borchers had influence over the other directors or shareholders does not mean that she was a controlling shareholder, as Plaintiff has failed to allege any circumstances under which other directors and shareholders were not free to act according to their own judgment out of fear of retribution. At best, Plaintiff's allegations reveal nothing more than her frustration that she was unable to persuade a majority of her fellow shareholders, each of whom held the same number of shares she held, to side with her on certain decisions. Plaintiff's allegations of "control" come nowhere close to the allegations in *Corwin*, and the North Carolina Supreme Court held that even those more substantial allegations were insufficient to state a claim for breach of fiduciary duty. So too here.

**B.     Plaintiff has not adequately alleged that Borchers breached any fiduciary duty she allegedly owed to Plaintiff or Myers Bigel.**

Even if Plaintiff could show that Borchers owed a fiduciary duty, there are no plausible factual allegations that Borchers breached such a duty. Plaintiff alleges that Borchers breached a fiduciary duty by "failing to treat Plaintiff equitably and instead discriminating and retaliating against her" and "impermissibly discriminating against [Plaintiff] based on her gender and race, denying her qualifying STL/STD request, subjecting her to a hostile work environment, threatening to take punitive action against her for voicing sincere concerns about discrimination at MB and amending the Attorney Compensation Plan Solely to penalize [Plaintiff] for the same." (Prop. Am. Compl. ¶ 171.) Likewise, Plaintiff alleges the Borchers breached a fiduciary duty to

Myers Bigel by failing "to monitor for compliance with law, including compliance with federal anti-discrimination laws and regulations" and deciding "to promote a hostile work environment in an effort to force Lemon to terminate her employment, deny Lemon's STL/STD request, amend the Attorney Compensation Plan solely to punish Lemon, and otherwise retaliate and discriminate against Lemon based on her gender and race." (*Id.* ¶ 172–73.)

The proposed amended complaint, however, fails to allege specific facts supporting the inference that Borchers took these actions against Plaintiff. By Plaintiff's own admission, the full Board of Directors made the decision to deny her request for short-term leave. (*Id.* ¶ 104.) Similarly, the full Board of Directors made the decision to amend the Attorney Compensation Plan. (*Id.* ¶ 114.) Many other allegations concern actions attributed to the Board of Directors, the Management Committee, or the so-called "Controlling Group." The proposed amended complaint contains relatively few factual allegations that are specific to Borchers, and is devoid of any well-pled factual allegations supporting the notion that Borchers breached a fiduciary duty to Plaintiff or Myers Bigel. Plaintiff's allegations that Borchers breached a fiduciary duty only make sense if one accepts her contention that anything anyone at Myers Bigel did, whether it was the Board of Directors, the Management Committee, the so-called "Controlling Group," or an individual shareholder/officer/director, was masterminded and superintended by Borchers. As discussed above, there are no well-pled facts supporting the notion that Borchers, as one of 25 equal shareholder/officer/directors, exercised such disproportionate control.

### C. Plaintiff has not adequately alleged that Borchers benefited, or sought to benefit, from her alleged violations of fiduciary duties allegedly owed to Plaintiff or Myers Bigel.

The North Carolina Supreme Court recently held that to prevail on a breach of fiduciary duty claim, a plaintiff must show that the defendant sought to benefit at the plaintiff's expense

through the acts constituting the breach of fiduciary duty. *King v. Bryant*, 369 N.C. 451, 465, 795 S.E.2d 340, 349 (2017) (stating that "before liability for breach of fiduciary duty can exist, it must be shown that the defendant sought to benefit himself at the expense of the other party"), *cert. denied*, 138 S. Ct. 314, 199 L. Ed. 2d 233 (U.S. 2017). Here, Plaintiff alleges that Borchers breached a fiduciary duty by discriminating against Plaintiff, retaliating against her, and denying her STL request (Prop. Am. Compl. ¶ 171) and by failing to monitor for compliance with law (*id.* ¶ 172), but she never alleges any facts supporting the notion that Borchers did so to benefit herself. To the extent Plaintiff makes any allegations about Borchers acting to benefit herself or the so-called "Controlling Group," those allegations concern alleged conduct that is distinct from the alleged breaches of fiduciary duty. (*E.g.*, Prop. Am. Compl. ¶¶ 115 (alleging that Borchers transferred a client relationship to increase the Controlling Group's control), 134–37 (alleging that Borchers and the Controlling Group had been intending to form their own firm for some time).) Accordingly, Plaintiff has failed to allege any facts that plausibly support an essential element of this proposed claim—that Borchers breached an alleged fiduciary duty to benefit herself.

**D.    Plaintiff has not adequately alleged that she suffered harm based on any alleged breach by Borchers.**

To prevail on a breach of a fiduciary duty claim, a plaintiff must show not only the existence of a fiduciary duty and that it was breached, but also that the breach proximately caused injury to the plaintiff. *Green*, 367 N.C. at 141, 749 S.E.2d at 268; *Farndale*, 176 N.C. App. at 68, 628 S.E.2d at 20. Thus to state a claim for a breach of fiduciary duty, the plaintiff must have suffered actual damages as a result of the defendant's breach. *Piedmont Inst. of Pain Mgmt. v. Staton Found.*, 157 N.C. App. 577, 589, 581 S.E.2d 68, 76 (2003); *Pitts v. Am. Sec. Ins. Co.*, 144 N.C. App. 1, 8, 550 S.E.2d 179, 186 (2001), *aff'd*, 356 N.C. 292, 569 S.E.2d 647 (2002).

Even if the proposed amended complaint adequately alleged that Borchers had breached a fiduciary duty, there are no well-pled factual allegations showing that the alleged breaches ultimately harmed Plaintiff. With respect to the short-term leave request, there is no allegation that the denial of that request (by the entire Board, not Borchers) had any actual financial or other negative impact on Plaintiff. With respect to the amendment to the Attorney Compensation Plan (again, by the entire Board, not Borchers), there is no allegation that the amendment had any actual financial or other impact on Plaintiff.[5] As to her departure from Myers Bigel, Plaintiff admits that she voluntarily left.[6] (Prop. Am. Compl. ¶ 132.) And while Plaintiff vaguely alleges that her "opportunities for compensation have been significantly diminished," she simultaneously acknowledges that she has obtained new employment, and never alleges that her compensation decreased after she made the decision to leave Myers Bigel. In sum, there are no well-pled factual allegations that Plaintiff was injured by any alleged breach of a fiduciary duty by Borchers.

### III. Plaintiff's proposed amended complaint does not adequately plead a stand-alone claim for breach of the implied covenant of good faith and fair dealing.

Plaintiff also seeks to add a North Carolina state law claim for breach of the implied covenant of good faith and fair dealing against Borchers and Myers Bigel. The proposed claim is predicated on two contracts—the Employment Agreement and the Shareholders' Agreement. (*Id.* ¶¶ 181–83.) Plaintiff alleges that these agreements exist and alleges that Defendants breached the implied covenants of good faith and fair dealing inherent in those agreements by "denying her STL, changing the Attorney Compensation Plan specifically to punish [Plaintiff], fostering a

---

[5] Plaintiff repeatedly alleges without any factual support that the amendment to the Attorney Compensation Plan was intended to punish her, but never alleges that it actually had a negative or punitive effect on her. (*E.g.*, Prop. Am. Compl. ¶¶ 112, 114, 131, 171, 173, 184–85.) The only reasonable inference is that it did not.

[6] Notably, while Plaintiff alleges that she was an employee of Myers Bigel, she does not allege that she was constructively discharged.

hostile work environment, and otherwise discriminating and retaliating against her based on her gender and race." (*Id.* ¶¶ 181–82, 184–85.)

"In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." *Bicycle Transit Auth. v. Bell*, 314 N.C. 219, 228, 333 S.E.2d 299, 305 (1985) (quotation omitted); *Maglione v. Aegis Family Health Ctrs.*, 168 N.C. App. 49, 56–57, 607 S.E.2d 286, 291 (2005)). However, "an asserted implied term cannot be used to contradict the express terms of a contract." *Hancock v. Americo Fin. Life & Annuity Ins. Co.*, 272 F. Supp. 3d 763, 776 (E.D.N.C. 2017) (Flanagan, J.) (citing *Vetco Concrete Co. v. Troy Lumber Co.*, 256 N.C. 709, 713, 124 S.E.2d 905 (1962)).

A claim for breach of the implied duty of good faith and fair dealing is commonly asserted with a claim for breach of the contract giving rise to that duty. When both claims are asserted, they rise and fall together. *Suntrust Bank v. Bryant/Sutphin Properties, LLC*, 222 N.C. App. 821, 833, 732 S.E.2d 594, 603 (2012) ("As the jury determined that plaintiff did not breach any of its contracts with defendants, it would be illogical for this Court to conclude that plaintiff somehow breached implied terms of the same contracts."); *Abbington SPE, LLC v. U.S. Bank, Nat'l Ass'n*, ___ F. Supp. 3d ___, No. 7:16-CV-249-D, 2016 WL 6330389, at *6 (E.D.N.C. Oct. 27, 2016) (stating that "when a court dismisses a breach-of-contract claim, it likewise rejects any claim for breach of the covenant of good faith and fair dealing contained in it"), *aff'd*, 698 F. App'x 750 (4th Cir. 2017).

A stand-alone claim for breach of the implied duty of good faith and fair dealing—that is, one asserted without any accompanying claim that the underlying contract was breached—only arises when the plaintiff and defendant are in a special relationship, such as an insurer/insured

relationship or, in limited circumstances, a creditor/debtor relationship. *Petruzzo v. HealthExtras, Inc.*, 2013 WL 4517273, at *6 (E.D.N.C. Aug. 23, 2013) (Flanagan, J.); *Richardson v. Bank of Am., N.A.*, 182 N.C. App. 531, 556–58, 643 S.E.2d 410, 426–27 (2007) (creditor/debtor relationship); *Alford v. Textile Ins. Co.*, 248 N.C. 224, 229, 103 S.E.2d 8, 12 (1958) (insurer/insured relationship). As this Court explained in *Petruzzo*, "[g]enerally, when a breach of the duty of good faith and fair dealing is based upon the same facts as a breach of contract claim, the breach of duty cannot survive absent the underlying breach of contract. . . . However, in North Carolina a duty of good faith and fair dealing may alternatively arise from certain special relationships between the parties." *Petruzzo*, 2013 WL 4517273, at *6 (identifying insurer/insured and creditor/debtor as special relationships that may support a stand-alone claim).

Absent one of these special relationships, a stand-alone claim for breach of the covenant of good faith and fair dealing must fail. Accordingly, when a plaintiff seeks to assert a stand-alone claim without adequately alleging the existence of a special relationship, that claim fails. *Abbington*, ___ F. Supp. 3d ___, 2016 WL 6330389, at *6 (dismissing a claim for breach of the implied covenant of good faith and fair dealing because the plaintiff failed to state an accompanying claim for breach of contract and failed to allege any special relationship that would support a stand-alone claim); *Laws v. U.S. Bank Nat'l Ass'n*, No. 5:15-CV-1-D, 2017 WL 2964809, at *10 (E.D.N.C. July 11, 2017) (granting summary judgment to the defendants on a claim for breach of the implied covenant of good faith and fair dealing because there was no special relationship supporting a separate claim for breach of that covenant); *Meineke Car Care Centers, Inc. v. RLB Holdings, LLC*, No. 3:08VC240-RJC, 2009 WL 2461953, at *11 (W.D.N.C. Aug. 10, 2009) (granting summary judgment on claim for breach of the implied covenant of good faith and fair dealing because accompanying claim for breach of contract failed and there was no special

relationship that would support a stand-alone claim), *rev'd on other grounds,* 423 F. App'x 274 (4th Cir. 2011).

### A. Plaintiff has not plausibly alleged that Defendants owed a special duty to Plaintiff that would support a stand-alone claim for breach of the implied covenant of good faith and fair dealing.

Plaintiff has not alleged that Defendants breached the Employment Agreement or the Shareholders' Agreement. Accordingly, her claim for breach of the implied covenant of good faith and fair dealing is a stand-alone claim, and its survival depends on the presence of well-pled facts that give rise to an inference that there was a legally recognized special relationship between Defendants and Plaintiff that would support the claim. *Abbington*, ___ F. Supp. 3d ___, 2016 WL 6330389, at *6; *Petruzzo*, 2013 WL 4517273, at *6.

Plaintiff has not pleaded any facts suggesting such a relationship. As set forth above in Part II.A, Plaintiff has failed to allege any facts that support an inference that Borchers owed Plaintiff a fiduciary duty, and her allegations and the governing document actively refute that conclusion. Far from showing a special relationship, the well-pled facts in the proposed amended complaint show that Borchers, Plaintiff, and their fellow shareholders each held an equal number of shares and each served as officers and directors of the firm. Accordingly, Plaintiff has not alleged any facts showing a special relationship between her and Borchers. With regard to her relationship with Myers Bigel, even if Plaintiff had adequately alleged that she was an employee, which she has not, North Carolina law does not recognize a fiduciary or confidential relationship between an employer and an employee. *Dalton*, 353 N.C. at 651, 548 S.E.2d at 708 ("Under the general rule, the relation of employer and employee is not one of those regarded as confidential.") (quotation omitted); *Reichhold Chems., Inc. v. Goel*, 146 N.C. App. 137, 155, 555 S.E.2d 281, 292 (2001) ("A managerial position alone does not demonstrate the requisite domination and influence

on the other required to create a fiduciary obligation.") (internal quotation marks omitted), *rev. denied*, 356 N.C. 677, 577 S.E.2d 634 (2003).

Having failed to assert a breach of contract claim, and failed to allege facts showing a special relationship, Plaintiff's proposed claim for breach of the implied covenant of good faith and fair dealing fails to state a claim under North Carolina law. Therefore, it would be futile to allow Plaintiff to amend the complaint to include this claim.

**B. Plaintiff has not plausibly alleged that Defendants deprived her of any benefit of the Employment Agreement or Shareholders' Agreement.**

A claim for breach of the implied covenant of good faith and fair dealing requires the Plaintiff to show that Defendants took action that deprived her of the benefits of the underlying contract. *Bicycle Transit*, 314 N.C. at 228, 333 S.E.2d at 305; *Hardee's Food Sys., Inc. v. Beardmore*, No. 5:96-CV-508-BR(2), 1997 WL 33825259, at *2 (E.D.N.C. June 6, 1997) (rejecting the notion that "the implied duty of good faith may arise absent some connection to obligations which are contained in, or fairly implied by, the contract itself"). Accordingly, a plaintiff must allege facts giving rise to a plausible inference that the plaintiff was deprived of the benefits of the contract. *Hancock v. Americo Fin. Life & Annuity Ins. Co.*, 272 F. Supp. 3d 763, 776 (E.D.N.C. 2017) (Flanagan, J.) (dismissing claim for breach of the implied covenant of good faith and fair dealing concerning an insurance policy because plaintiff had not "alleged that defendants took any action that prevented plaintiff from receiving benefits of the policy"), *appeal dismissed and remanded,* 723 F. App'x 241 (4th Cir. 2018); *McKinney v. Nationstar Mortg., LLC*, No. 5:15-CV-637-FL, 2016 WL 3659898, at *8 (E.D.N.C. July 1, 2016) (Flanagan, J.) (dismissing claim for breach of the implied covenant of good faith and fair dealing because the contract at issue did not expressly or impliedly create the duty that plaintiff contended defendant breached).

21

Notably, Plaintiff's Memorandum in support of her motion for leave to amend contains less than a page about this new claim, and asserts only that the proposed new claim "states all the elements" of the claim. (D.E. 27 at 15–16.) Of course, simply "stating the elements" of a claim does not satisfy the *Iqbal/Twombly* standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007)). (Plaintiff alleges generally that Defendants breached the implied covenant of good faith and fair dealing by "denying her STL, changing the Attorney Compensation Plan specifically to punish [Plaintiff], fostering a hostile work environment, and otherwise discriminating against her based on her gender and race," (Prop. Am. Compl. ¶¶ 184–85), but never explains how these alleged breaches deprived her of any benefit she was entitled to under the Employment Agreement or Shareholders' Agreement. With respect to the denial of STL, Plaintiff has not alleged that the STL policy is a contract, and has not explained how that STL is connected to either of the agreements that are the basis for her breach of the implied covenant claim. With respect to changing the Attorney Compensation Plan, Plaintiff alleges that the Attorney Compensation Plan was an "addendum" to the Employment Agreement (Prop. Am. Compl. ¶ 27), but never contends that Myers Bigel breached that Plan or deprived her of any benefit she was entitled to under the Plan. Her sole contention, which she makes without supporting factual allegations, is that Myers Bigel changed the Plan to punish her, but she does not contest the Board of Directors' authority to make that change. Finally, with respect to alleged discrimination and hostile work environment, Plaintiff's allegations have no direct connection to the Employment Agreement or Shareholders' Agreement.

Here, as in *Hancock*, Plaintiff has not "alleged facts permitting a plausible inference that defendants did 'anything which injures the right of the other to receive the benefits of the agreement.'" *Hancock*, 272 F. Supp. 3d at 776 (quoting *Bell*, 314 N.C. at 228, 333 S.E.2d 299); *see also Reaves v. Seterus, Inc.*, No. 5:15-CV-33-FL, 2015 WL 2401666, at *4 (E.D.N.C. May 20, 2015) (Flanagan, J.) (dismissing claim for breach of the implied covenant of good faith and fair dealing because "plaintiff has not alleged sufficient facts to show that defendant's conduct worked to undermine the purpose of the mortgage agreement" where "plaintiff's complaint conclusorily states that defendant failed to comply with the terms of the agreement, instead of showing how defendant failed to comply").

Moreover, as with her breach of fiduciary duty claim, Plaintiff has not alleged facts giving rise to a plausible inference that any alleged breach of the covenant of good faith and fair dealing caused injury to her. (*See supra* Part II.D.) To the extent that Plaintiff alleges that she suffered emotional distress, she cannot recover emotional distress damages on a claim for breach of the implied covenant of good faith and fair dealing.[7]

In sum, Plaintiff has not plausibly alleged facts showing (i) the type of special relationship required to maintain a stand-alone claim for breach of the implied covenant, (ii) that she was deprived of any benefit of the underlying agreements, or (iii) that the alleged breaches of the implied covenant caused her any actual injury. Consequently, Plaintiff has not stated a claim for

---

[7] A claim for breach of the implied covenant is in essence a claim for breach of contract, albeit one relating to an implied, rather than express, term. *Lane v. Scarborough*, 284 N.C. 407, 410–11, 200 S.E.2d 622, 624–25 (1973). Subject to a very limited exception that does not apply here, emotional distress damages are not recoverable for breach of contract. *See Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.*, 327 N.C. 283, 301, 395 S.E.2d 85, 95–96 (1990) (describing the extremely limited circumstances in which emotional distress damages make be recovered based on breach of contract); *Riggs v. Orkin, Inc.*, No. 7:11-CV-5-D, 2011 WL 2417016, at *2 (E.D.N.C. June 13, 2011) (same). Accordingly, emotional distress damages are not recoverable on a claim for breach of the implied covenant of good faith and fair dealing.

breach of the implied covenant of good faith and fair dealing, and granting her leave to amend would serve no purpose.

CONCLUSION

Plaintiff's motion for leave to amend is futile: Plaintiff's proposed amendments do not rehabilitate her existing claims and do not plead any new claim that would withstand scrutiny under Rule 12(b)(6).  Having tried twice, Plaintiff has been unable to plead facts that state a plausible claim.  Accordingly, Defendants ask that Plaintiff's motion for leave to amend the complaint be denied and that her existing claims be dismissed with prejudice.

This the 20th day of December, 2018.

SMITH, ANDERSON, BLOUNT, DORSETT,
 MITCHELL & JERNIGAN, L.L.P.

By:    /s/ Kerry A. Shad
       Kerry A. Shad
       State Bar No. 18410
       Email: kshad@smithlaw.com
       Isaac A. Linnartz
       North Carolina State Bar No. 39858
       Email: ilinnartz@smithlaw.com
       Taylor M. Dewberry
       North Carolina State Bar No. 52108
       Email: tdewberry@smithlaw.com
       Post Office Box 2611
       Raleigh, North Carolina 27602-2611
       Telephone:  (919) 821-1220
       Facsimile:  (919) 821-6800
       *Attorneys for Defendant*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing document with the Clerk of Court

using the CM/ECF System, which will send notification of such filing to the following:

J. Heydt Philbeck
Bailey & Dixon, LLP
434 Fayetteville Street, Suite 2500
Raleigh, North Carolina 27601
*Attorney for Plaintiff*

Brandon S. Neuman
Nathaniel J. Pencook
Shanahan McDougal, PLLC
128 E. Hargett Street, Third Floor
Raleigh, North Carolina 27601
*Attorneys for Plaintiff*

This the 20th day of December, 2018.

SMITH, ANDERSON, BLOUNT, DORSETT,
MITCHELL & JERNIGAN, L.L.P.

By:     /s/ Kerry A. Shad
        Kerry A. Shad
        State Bar No. 18410
        Email: kshad@smithlaw.com
        Isaac A. Linnartz
        North Carolina State Bar No. 39858
        Email: ilinnartz@smithlaw.com
        Taylor M. Dewberry
        North Carolina State Bar No. 52108
        Email: tdewberry@smithlaw.com
        Post Office Box 2611
        Raleigh, North Carolina 27602-2611
        Telephone:  (919) 821-1220
        Facsimile:  (919) 821-6800
        *Attorneys for Defendant*

25